UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA P. COLLINS,

                Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. C11-5316-TSZ-BAT

**REPORT AND RECOMMENDATION**

Joshua P. Collins appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Supplemental Security Income and Disability Insurance Benefits. He contends that the administrative law judge ("ALJ") erred by: (1) improperly evaluating the medical evidence; (2) improperly evaluating his credibility; (3) improperly evaluating lay witness testimony; (4) improperly assessing his residual functional capacity; and (5) improperly finding him capable of performing his past relevant work and other work existing in significant numbers in the national economy. Dkt. No. 17. For the reasons set forth below, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative proceedings.

                **I.    FACTUAL AND PROCEDURAL HISTORY**

Mr. Collins was born in 1982, and has a high school education. Tr. 143, 147, 162. His

past work experience includes work as a home caregiver. Tr. 159. On April 6, 2007, he applied for benefits, alleging disability beginning February 12, 2006. Tr. 143-44, 147-49. His applications were denied initially and on reconsideration. Tr. 83-92. Mr. Collins requested a hearing which took place on September 11, 2009. Tr. 36-78. On February 26, 2010, the ALJ issued a decision finding Mr. Collins not disabled. Tr. 20-31. Mr. Collins' administrative appeal was denied by the Appeals Council, making the ALJ's ruling the final decision of the Commissioner. Tr. 1-5.

## II.  THE ALJ'S DECISION

Utilizing the five-step evaluation process,[1] the ALJ made the following findings:

**Step one:** Mr. Collins had not engaged in substantial gainful activity since February 12, 2006, the alleged onset date. Tr. 22.

**Step two:** Mr. Collins had the following severe impairments: mood disorder, not otherwise specified vs. bipolar disorder; and methamphetamine/marijuana dependence, in reported remission. *Id*.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 23.

**Residual Functional Capacity:** Mr. Collins had the residual functional capacity to perform a full range of work at all exertional levels but was limited to simple, routine work with no public contact. Tr. 24.

**Step four:** Mr. Collins could perform his past relevant work. Tr. 30.

**Step five:** Mr. Collins could perform other jobs existing in the national economy and, therefore, was not disabled. *Id*.

## III.  DISCUSSION

**A.  The ALJ's Evaluation of the Medical Opinion Evidence**

Mr. Collins argues that the ALJ erred in evaluating the opinions of his treating doctor R.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

Bruce Worth, M.D.; the examining doctors James Parker, M.D., Michael Brown, Ph.D., and Kevin N. Morris, Psy.D.; the medical expert Arthur L. Lewy, Ph.D.; and the nonexamining doctor Thomas Clifford, Ph.D. Dkt. No. 17 at 3-14.

In general, more weight should be given to the opinion of a treating doctor than to a nontreating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id*. at 830-31. Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id*. (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer her conclusions; she must also explain why her interpretation, rather than the doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

### *1. James Parker, M.D.*

On November 17, 2007, examining psychiatrist James Parker, M.D., completed a psychiatric assessment of Mr. Collins. Tr. 259-62. Mr. Collins reported using methamphetamines twice a week and marijuana less frequently. Tr. 260. Dr. Parker noted Mr. Collins' affect was labile and his associations were loose. Tr. 261. However, memory testing indicated he was able to recall 3 out of 3 objects after five minutes, follow a three-step command, and perform serial 3's from 20. *Id*. Fund of knowledge was intact and he was

oriented to place and date. *Id*. Mr. Collins stated he could clean, cook simple meals, do his own laundry, and was social with his family. Tr. 260.

Dr. Parker diagnosed mood disorder, NOS, methamphetamine dependence, and cannabis dependence. Tr. 261. He opined Mr. Collins "would <u>not</u> be able to be consistent at simple repetitive tasks or with interacting with coworkers, supervisors, or the public." Tr. 262 (emphasis added). He noted that the clinical history suggested "a mood disorder, complicated by a thought disorder. However, substance induced mood and thought disorder cannot be ruled out. A formal assessment for chemical dependence is indicated." *Id*.

Mr. Collins argues that the ALJ misread Dr. Parker's opinion as she incorrectly stated that Dr. Parker found Mr. Collins "was limited to simple, repetitive tasks and from interacting with coworkers, supervisors or the public." Tr. 27. The ALJ accorded Dr. Parker's opinion "significant weight" because it was "based on an objective examination and the findings are supported by the record." *Id*. However, the ALJ found "the evidence, including the ability to frequent medical appointments and the opinion of State agency psychologist Dr. Clifford . . ., indicate the claimant could interact with co-workers and supervisors, but not the public." *Id*. The Commissioner did not address Mr. Collins' argument that the ALJ misstated Dr. Parker's opinion.

The Court agrees with Mr. Collins that the ALJ's representation of Dr. Parker's opinion is not entirely accurate as it plainly omits Dr. Parker's finding that Mr. Collins was <u>not</u> capable of work activity because "[h]e would <u>not</u> be able to be consistent at simple repetitive tasks." Tr. 27, 262. In addition, the ALJ erred by failing to incorporate Dr. Parker's opinion into her RFC assessment despite giving "significant weight" to the opinion. On remand, the ALJ should reevaluate Dr. Parker's opinion and its affect on Mr. Collins' RFC assessment. *See Regennitter*

*v. Commissioner*, 166 F.3d 1294, 1297 (9th Cir. 1999) (finding "inaccurate characterization of the evidence" warrants remand). If the RFC is revised, the ALJ should also call a vocational expert to testify to jobs that may exist with a properly framed hypothetical that incorporates all of Mr. Collins' limitations.

### *2. Kevin N. Morris, Psy.D.*

On September 2, 2008, examining psychologist Kevin N. Morris, Psy.D., completed a psychological/psychiatric evaluation for the Washington State Department of Social and Health Services ("DSHS"). Tr. 382-93. Dr. Morris diagnosed Mr. Collins with mood disorder NOS and methamphetamine dependence. Tr. 383. He opined that Mr. Collins' drug use significantly exacerbated his mood disorder, but believed his symptoms would persist even after treatment. Tr. 383-84.

Dr. Morris further opined that Mr. Collins' cognitive limitations ranged from "*mild*" to "*marked*," including one "<u>marked</u>" limitation in his "[a]bility to exercise judgment and make decisions." Tr. 384. Again, the ALJ appears to have misread the evaluation, as she incorrectly stated that "Dr. Morris opined that the claimant's cognitive limitations ranged from "*mild*" to "*moderate*" with one "<u>marked</u>" limitation in the claimant's "<u>ability to perform routine tasks</u>" – rather than in his "<u>ability to exercise judgment and make decisions</u>." Tr. 28, 384.

The ALJ stated she was giving "significant weight" to Dr. Morris' findings that Mr. Collins had "none" to "moderate" limitations, but "little weight" to his opinion that Mr. Collins had a "marked" limitation in carrying out routine tasks because "this is inconsistent with the medical evidence and with Dr. Morris' mental status examination which showed few errors." Tr. 29. "Also, Dr. Morris did not consider [Mr. Collins'] noncompliance with prescription medication, contributing to his cognitive limitations." Tr. 29.

Again, the ALJ's misstatements about the evidence deprive this Court of the ability to conduct any meaningful review. On remand, the ALJ should reevaluate Dr. Morris' opinion and its affect on Mr. Collins' RFC assessment. *See Regennitter*, 166 F.3d at 1297.

### 3. Michael L. Brown, Ph.D.

On April 29, 2009, examining psychologist Michael L. Brown, Ph.D., completed a psychological/psychiatric evaluation for DSHS. Tr. 309-16. Dr. Brown diagnosed schizoaffective disorder and panic disorder with agoraphobia, and rated the severity of Mr. Collins' "verbal expression of anxiety or fear" and "global illness" as "marked." He opined Mr. Collins had "moderate" limitations in cognitive factors based on his mental status examination findings. Tr. 310-11. He also opined Mr. Collins had "marked" limitations in almost all of the social factors, noting Mr. Collins' cooperation, grooming, and hygiene were marginal; his thinking was disorganized, tangential, and circumstantial; he was hard to interview; and he needed continual redirection. Tr. 311. Nevertheless, Dr. Brown indicated Mr. Collins' mood and anxiety symptoms were treatable with medication monitoring and therapy. Tr. 312.

The ALJ accorded "significant weight" to Dr. Brown's opinion that Mr. Collins had moderate limitations in cognitive factors because it was supported by the record and other opinions. Tr. 28. However, the ALJ accorded "little weight" to the portion of Dr. Brown's assessment that found marked limitations in social, factors finding it was "inconsistent with the evidence, [and] the assessments of Dr. Clifford and Dr. Worth, wherein they found only moderate limitations in social interactions." Tr. 28.

Plaintiff argues that an ALJ is not entitled to pick and choose when evaluating a physician's opinion. Dkt. No. 17 at 10. However, where all or part of a physician's opinion is contradicted by other, independently derived evidence, the ALJ may reject all or part of such

opinions by setting forth specific and legitimate reasons supported by substantial evidence in the record. *See Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001). It is the ALJ's province to resolve conflicts and ambiguity in the medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). Often, there may be more than one rational interpretation of the evidence. Thus, if the ALJ's interpretation is supported by substantial evidence, it must be upheld. The ALJ provided adequate reasons for not fully crediting Dr. Brown's opinions.

### *4. R. Bruce Worth, M.D.*

R. Bruce Worth, M.D., has been Mr. Collins' primary care provider since 2007. Tr. 56-57, 211, 239-44, 281-300, 342-78. He diagnosed bipolar disorder and methamphetamine dependence, and prescribed Paxil, Trileptal, Seroquel, Wellbutrin, and Zyprexa. Tr. 22, 355.

On March 20, 2008, Dr. Worth submitted a letter stating, "Josh is a very pleasant young man with a very clear diagnosis of bipolar disorder, type I. He is totally and permanently disabled due to that diagnosis." Tr. 281, 359. Dr. Worth also submitted a "Medical Source Statement" on August 10, 2009, indicating that Mr. Collins had "marked" limitations in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 342-44. Dr. Worth opined, "[Mr. Collins] has bipolar disorder or schizophrenic disorder and is some better with treatments. Compliance with medical regimen is very difficult for him, even with family assistance! He is permanently and totally disabled related to the above mentioned health issues." Tr. 344.

The ALJ accorded Dr. Worth's opinion "little weight," finding it was unsupported by his own treatment records which showed Mr. Collins had "good concentration, interaction, and focus when he is compliant with medication." Tr. 27, 25, 282 ("feeling well today" "pleasant to be around"), 284 ("alert and cooperative; normal mood and affect; normal attention span and concentration), 288 ("bipolar disorder better"), 290 ("the bipolar disorder is better"), 291 ("affect improved" "more interactive"), 322, 325, 328, 332 ("normal mood and affect"), 329 ("seems to be doing the best he's done with the current meds"), 331 ("denies depression, anxiety, mental disturbance, and suicidal ideation"), 337 ("bipolar disorder better"), 348 ("[patient] denies any concerns today, states that medication seems to be working"), 349 ("much better"), 354-55, 357 ("much better" "stil[l] distant" "but focused"). The ALJ also noted Mr. Collins "denied anxiety or other mental disturbance several times during office appointments." Tr. 27, 240, 284, 293, 296, 349, 357, 364, 367, 374, 377. The ALJ further found Dr. Worth's opinion was inconsistent with a chart note in which he stated Mr. Collins was "very bright" and "college suggested." Tr. 27, 296. The ALJ added "Dr. Worth stated that claimant needed drug treatment, but the claimant refused, which clearly contributes to his problems." Tr. 27, 351-52, 355.

When an ALJ makes her own interpretation of the medical evidence, and her interpretation is contrary to that of a treating physician, the ALJ must explain why her own interpretations, rather than the doctor's, are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Here, the ALJ's decision clearly documents plaintiff's noncompliance with prescribed medication and recommended drug treatment. Tr. 25, 27. In addition, Dr. Worth's treatment notes indicate that Mr. Collins' psychiatric symptoms improved with medication, such as the many reports of improved mood and affect. *Id*.

Mr. Collins argues that the ALJ fails to acknowledge that Dr. Worth also wrote that

"[c]ompliance with medical regiment is very difficult for him, even with family assistance." Dkt. No. 17 at 6. He contends that his noncompliance with medication is not volitional but a symptom of his bipolar disorder. *Id*. While it may be, as Mr. Collins argues, that his noncompliance with medication is a symptom of his bipolar disorder, he does not point to any evidence in the record that this was the reason he was not taking them. The ALJ properly found the fact that Dr. Worth's medical records showed Mr. Collins psychiatric symptoms improved on medication calls into doubt his opinion that Mr. Collins was permanently and totally disabled. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.")

In addition, the ALJ found Dr. Worth's opinion that Mr. Collins had "marked" limitations in "sustained concentration and persistence" was inconsistent with Dr. Parker's findings, Dr. Clifford's assessment, and Dr. Brown's assessment, that indicate Mr. Collins had only "moderate" cognitive limitations. Tr. 27, 261, 277-79, 311. As the ALJ noted, "[m]emory testing indicated he could recall 3/3 objects after five minutes; in concentration testing the score was 3/3 on a three step command." Tr. 27, 261, 279, 311. The medical expert, Dr. Lewy, likewise testified that Dr. Worth's opinion that Mr. Collins was "permanently and totally disabled" was "difficult to reconcile with the longitudinal evidence." Tr. 27, 44 ("when I look at the treating source, actual treating source records from Dr. Worth, there are no indications of outstanding signs of mental problems. And things seem entirely stable. I had a good deal of trouble to reconcile that, but it appears that Mr. Collins has been responsive to treatment."). An examining or non-examining physician's opinion may constitute substantial evidence when it is consistent with other independent evidence in the record. *See Thomas v. Barnhart,* 278 F.3d

947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

The ALJ also noted there was no indication that Dr. Worth was familiar with the definition of "disability" under the Social Security Administration regulations. Tr. 27. As the Commissioner points out, the ALJ was not required to adopt Dr. Worth's opinion that plaintiff was permanently and totally disabled. Rather, "under 20 CFR 404.1527(e) and 416.927(e), some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." SSR 96-5p; 20 CFR § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.")). Whether a claimant is disabled under the Act is an issue reserved to the Commissioner and "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p.

Finally, the ALJ noted that on September 1, 2009, Dr. Worth submitted a Drug Addiction chart in which he opined that Mr. Collins' drug addiction was not his only impairment and that if Mr. Collins stopped using drugs, his bipolar disorder would still be disabling. Tr. 395. The ALJ agreed that substance abuse was not material, but found, as indicated in the decision, "with or without drugs, the claimant's impairments are not disabling." Tr. 28. As indicated above, a statement by a treating source that a claimant is disabled is not entitled to controlling weight.

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. When the evidence is susceptible to more than one

rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. While it is perhaps possible to construe the medical evidence as urged by the plaintiff, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation. The ALJ did not err in her assessment of Dr. Worth's opinions. The reasons given by the ALJ to discount Dr. Worth's opinions were specific and legitimate and supported by the record.

### 5. *Thomas Clifford, Ph.D.*

On November 27, 2011, State agency psychologist Thomas Clifford, Ph.D., reviewed the record and completed a Mental Residual Functional Capacity ("MRFC") assessment. Tr. 277-79. In section I "Summary Conclusions," Dr. Clifford indicated Mr. Collins was "moderately limited" in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. Tr. 277-78.

In section III "Functional Capacity Assessment," Dr. Clifford opined that Mr. Collins would be able to understand, remember, and carry out "simple and some detailed tasks on a consistent basis but would have difficulty with complex tasks due to his long history of illicit drug abuse in conjunction with his mood disorder." Tr. 279. He further opined that if Mr. Collins remained clean and sober, he would be able to interact with a supervisor and a few coworkers, but not with the general public. *Id*. In addition, Mr. Collins "would be able to adapt in a [clean and sober] environment as long as he was abstinent but may have difficulty with

frequent change." *Id*.

The ALJ adopted Dr. Clifford's assessment, finding it "consistent with the medical expert's opinion and the medical evidence in the record." Tr. 29. In accordance with Dr. Clifford's opinion, the ALJ limited Mr. Collins to "simple, routine work with no public contact." Tr. 24.

Mr. Collins argues that although the ALJ adopted Dr. Clifford's assessment, she failed to include all of the moderate limitations identified by Dr. Clifford in Section I of the MRFC assessment. Dkt. No. 17 at 13-14. However, as explained in the agency's Program Operations Manual, an ALJ properly focuses on the "narrative" portion of the MRFC form, rather than the "Summary Conclusions" portion. *See* Program Operations Manual System ("POMS") DI 25020.101(B)(1). The POMS provides,

> The purpose of section I ("Summary Conclusion") on the SSA-4734-F4-SUP is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of form SSA-4734-F4-SUP **that adjudicators are to use as the assessment of RFC**. Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work. This must be done carefully using the adjudicator's informed professional judgment.

*Id*. It is clear that the ALJ acted in accordance with the agency's established procedures when she relied on the narrative portion of Dr. Clifford's opinion set forth in the Functional Capacity Assessment rather than on the limitations recorded in the Summary Conclusions section.

Mr. Collins also argues that Dr. Clifford's opinion was entitled to less weight than the opinions of treating and examining physicians such as Dr. Worth, Dr. Parker, Dr. Brown, and Dr.

REPORT AND RECOMMENDATION - 12

Morris. Dkt. No. 17 at 14.  Although an ALJ generally gives more weight to a treating or examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.  Here, the ALJ found Dr. Clifford's assessment was consistent with the medical expert's opinion and with the medical evidence in the record.  Tr. 29.  The ALJ did not identify the particular medical evidence to which she was referring, however.  Because this matter is being remanded for reconsideration of the medical opinions of Dr. Parker and Dr. Morris, the ALJ should also reconsider and further explain the weight given to these doctors' opinions as well as the opinion of Dr. Clifford on remand.

### *6. Arthur Lewy, M.D.*

Medical Expert Arthur Lewy, M.D., testified at the hearing on September 11, 2009.  Tr. 42-49.  He opined that Mr. Collins' severe impairments, including mood disorder, not otherwise specified, and a history of substance abuse, did not meet a Listing.  Tr. 29, 42-43.  He testified, "when I look at the treating source, actual treating source records from Dr. Worth, there are no indications of outstanding signs of mental problems.  And things seem entirely stable.  I had a good deal of trouble to reconcile that, but it appears that Mr. Collins has been responsive to treatment.  There's been no decompensation.  I didn't know what to make of Dr. Worth's opinion in light of his own records."  Tr. 29, 44.  Dr. Lewy opined Mr. Collins had the ability to understand and remember basic tasks, tolerate reasonable supervision, perform tasks at moderate pace, and meet typical production demands.  Tr. 29, 45.  The ALJ accorded Dr. Lewy's opinions "significant weight," because Dr. Lewy considered Mr. Collins substance abuse, reviewed the entire record, and reached conclusions which are supported by the record.  Tr. 29.

Mr. Collins argues that Dr. Lewy's opinion is inconsistent with the opinions of Drs. Worth, Parker, Brown, and Morris. Dkt. No. 17 at 12. Mr. Collins also argues that Dr. Clifford's opinion was entitled to less weight than the opinions of Dr. Worth, Dr. Parker, Dr. Brown, and Dr. Morris. Dkt. No. 17 at 14. Although an ALJ generally gives more weight to a treating or examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33. Here, the ALJ merely states Dr. Lewy "reached conclusions which are supported by the record." Tr. 29. The ALJ did not identify the particular medical evidence to which she was referring, however. The ALJ thus should reevaluate Dr. Lewy's opinion, along with the medical opinions of Drs. Parker, Morris, and Clifford, and its affect on Mr. Collins' RFC on remand.

Mr. Collins also alleges that the ALJ erred by relying on Dr. Lewy's opinion because he had a possible conflict of interest. Dkt. No. 17 at 12. He contends that because "Dr. Lewy is under contract with Social Security performing quality review of state agency disability determinations, there is here the implication of a possible conflict of interest between his psychological practice performing quality reviews and his providing testimony as an impartial medical expert." *Id*. at 13. Citing *Whitaker v. Astrue*, Case No. 09-5642-RBL, 2010 WL 3503417 (W.D. Wash. 2010), Mr. Collins contends that Dr. Lewy is prejudice against psychologists such as Dr. Brown and Dr. Morris who perform evaluations at the request of DSHS. *Id*.

In *Whitaker*, the ALJ had adopted Dr. Lewy's opinion regarding the plaintiff's mental condition, which included a rejection of many of the DSHS evaluations. At the administrative hearing, Dr. Lewy testified that he believed the DSHS evaluations were prepared by the

REPORT AND RECOMMENDATION - 14

evaluators "'for the purpose of qualifying someone for disability.'" *Id*. *3. The District Court remanded the matter, finding "[s]uch bias, expressed at the administrative hearing, makes any review of such opinions unfair to the social security claimant. In turn, the ALJ's reliance on Dr. Lewy's opinion, based on a biased review of the medical record, was improper." *Id*.

Here, however, Mr. Collins has not shown that Dr. Lewy was biased to the degree that his testimony could not be relied upon. Rather, Dr. Lewy relied primarily on Dr. Worth's medical records in formulating his opinion. In response to questioning by the ALJ about Dr. Brown's opinion that Mr. Collins had "marked limitations basically across the entire sphere of social . . . contact," Dr. Lewy noted only that concurrent records from Dr. Worth were benign, and that Mr. Collins had declined to discuss his drug and alcohol problems with Dr. Brown. Tr. 47, 309, 311. Dr. Lewy stated, "It's one of those issues I couldn't resolve," but otherwise he did not discredit Dr. Brown's opinion. Tr. 47. Dr. Lewy did not address Dr. Morris' opinion. The court finds no error in the ALJ's relying on Dr. Lewy's medical opinions when evaluating Mr. Collins' mental condition.

### B. Evaluation of Lay Witness Testimony

Mr. Collins contends the ALJ failed to provide legally sufficient reasons for rejecting the testimony of his mother, Donna Lee Collins. Dkt. No. 17 at 18-19. In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount the testimony of a lay witness, she must provide

"reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill*, 12 F.3d at 919.

Plaintiff's mother testified at the administrative hearing and submitted two third-party reports. Tr. at 58-69, 164-72, 219-23. As summarized by the ALJ, Ms. Collins "described significant reckless, violent, and abusive behavior that she ascribed to his mental health conditions that persisted even during abstinence from drugs and compliance with medications." Tr. 26. The ALJ rejected this testimony finding it was inconsistent with her testimony that Mr. Collins' behavior and concentration improved with medication. Tr. 26, 68. Inconsistency with the evidence of record is a germane reason for discrediting lay witness testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (noting that inconsistency with the medical record is a germane reason for discrediting the testimony of a lay witness). In addition, the ALJ found Ms. Collins' lay witness statements were inconsistent with Mr. Collins' relatively active level of daily functioning, and thus were properly rejected. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1163-64 (9th Cir. 2008) (finding that inconsistency between claimant's activities and a lay witness statement is a germane reason to reject the lay testimony). Accordingly, there was no error.

### C. Credibility of Mr. Collins' Testimony

Plaintiff argues that the ALJ improperly evaluated his testimony about his symptoms and limitations. Dkt. No.17 at 14-17. According to the Commissioner's regulations, a determination of whether to accept a claimant's subjective symptom testimony requires a two step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (1996); SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably

could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722 (internal citations omitted). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Id*. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Id*.

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." Tr. 25. Because this case is being remanded for reconsideration of the medical evidence, and the Court has found that credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded. After re-evaluating the medical evidence of record, the ALJ will be in a better position to evaluate Mr. Collins' credibility. On remand, the ALJ should properly assess Collins' testimony, and provide clear and convincing reasons for rejecting it should such a

conclusion be warranted.

**D. The ALJ's Residual Functional Capacity Assessment**

As discussed above, the ALJ erred in her assessment of the medical evidence requiring remand. Accordingly, on remand, after properly evaluating the medical evidence, the ALJ will reevaluate Mr. Collins' RFC. If the ALJ's RFC assessment is revised, the ALJ will also call a vocational expert ("VE") to testify about jobs that may exist with a properly framed hypothetical that incorporates all of plaintiff's limitations.

**E. New Evidence Submitted to the Appeals Council**

Mr. Collins argues that additional evidence submitted to the Appeals Council, but not reviewed by the ALJ, shows that the ALJ's decision is not supported by substantial evidence. Dkt. No. 17 at 22-23. Specifically, he argues that a psychological evaluation performed by Tasmyn Bowes, Psy.D., on March 11, 2010, supports a finding that he is disabled as a result of his mental impairments. Tr. 400-35.

It is clear that the ALJ did not err in failing to consider this evidence, as it was not before her when she issued her decision. This additional evidence was submitted by Mr. Collins to the Appeals Council following the ALJ's February 26, 2010 decision. After reviewing the additional evidence, the Appeals Council concluded that it did not provide a basis for reversing the ALJ's decision. Tr. 2. Nevertheless, Mr. Collins wants the Court to consider it now in determining whether the ALJ's decision is supported by substantial evidence. Dkt. No. 17 at 23.

The Ninth Circuit has recently held that the Court may consider additional evidence submitted to the Appeals Council for the purposes of determining "whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (citing

*Ramirez v. Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993)). Here, however, the Court does not have to decide whether Dr. Bowes psychological evaluation would justify a remand. Because this matter is being remanded, and these materials are part of the record, the ALJ should consider Dr. Bowes evaluation as part of her reevaluation of the medical evidence.

### IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand the ALJ should (1) reevaluate the medical evidence, including the opinions of Dr. Parker, Dr. Morris, Dr. Clifford, Dr. Lewy, and Dr. Bowes; (2) reevaluate Mr. Collins' testimony; (3) reassess Mr. Collins' RFC; and (4) reassess steps four and five of the sequential evaluation process utilizing a vocational expert as deemed appropriate.

Objections, if any to this Report and Recommendation, must be filed and served no later than **January 18, 2012.** If no objections are filed, the matter will be ready for the Court's consideration on **January 20, 2012**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 4th day of January, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge